The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
August 9, 2018

## 2018COA110

**No. 13CA1604 People v. Monroe — Criminal Law — Affirmative Defenses — Self-Defense — Use of Physical Force in Defense of a Person**

A division of the court of appeals considers whether a prosecutor's discussion of the availability of an avenue of retreat impermissibly suggests a duty to retreat before acting in self-defense.  The division concludes that the prosecutors' comments in this case functioned to impose a duty to retreat and were therefore improper.  The division further concludes that the prosecutors' repeated misstatement of the law, ultimately acquiesced to by the trial court, created a reasonable probability that the jury would convict the defendant without considering the actual elements of the affirmative defense of self-defense.

Accordingly, the division reverses and remands for a new trial.

COLORADO COURT OF APPEALS                                      2018COA110

_____

Court of Appeals No. 13CA1604
City and County of Denver District Court No. 11CR4258
Honorable John W. Madden IV, Judge

_____

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Sheila R. Monroe,

Defendant-Appellant.

_____

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE TOW
Dailey and Dunn, JJ., concur

Announced August 9, 2018

_____

Cynthia H. Coffman, Attorney General, Matthew S. Holman, First Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Anne T. Amicarella, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1 Defendant, Sheila R. Monroe, was convicted of attempted first degree murder and first degree assault after stabbing another passenger on a city bus. The trial court adjudicated her a habitual criminal and sentenced her to concurrent prison terms of ninety-six years on the attempted murder count and forty-eight years on the assault count.

¶ 2 We reverse the convictions and remand for a new trial.

## I. Background

¶ 3 At trial, the jury heard the following evidence. Monroe boarded an RTD bus and sat down next to James Faulkenberry. The two almost immediately began to argue. Various witnesses testified that both parties were being aggressive. The jury also heard that Monroe displayed a knife, called an acquaintance over, and suggested the acquaintance had a firearm. Eight to ten minutes after the dispute began, Monroe stabbed Faulkenberry in the neck. At trial, Monroe did not testify, but her counsel asserted that Monroe had been acting in self-defense.

¶ 4 In closing, the prosecution argued that the stabbing was in response to Faulkenberry's threat to call the police. The defense argued Monroe's actions were in response to Faulkenberry's

1

threatening behavior and that she only used force in self-defense because, after eight to ten minutes of heated argument, Faulkenberry suddenly reached into his jacket.

## II.     Analysis

¶ 5      Monroe argues the trial court committed reversible error when it permitted the prosecution to argue that the jury should consider Monroe's failure to retreat when deciding whether she had acted in self-defense.  Because the prosecution's argument effectively imposed on Monroe a duty to retreat, we agree.

### A.     The Prosecutors' Arguments

¶ 6      During closing argument, one of the prosecutors pointed out that Monroe could have retreated but did not.  Specifically, the prosecutor argued, "She didn't have any duty to retreat, but she does have a clear line of retreat, if she's actually scared for her safety."

¶ 7      Defendant's counsel objected.  The court overruled the objection, stating to the jury, "[Y]ou cannot find that she has a duty or obligation to retreat.  But this is an argument as to whether or not she reasonably believed there was an imminent use of force.  I'll allow it for that purpose only."  The prosecutor immediately

2

continued in the same line of argument: "Again, she did not have any duty to retreat but could have backed away, if she wanted to, if she was actually afraid."

¶ 8    During rebuttal, the other prosecutor revisited the topic of the available avenue of retreat: "No one in Colorado has to run away from someone endangering them.  But let's be clear.  When you do not remove yourself from a situation when you easily can, that contradicts that you were in fear of being hurt."  The defense again objected, and again the court overruled the objection while instructing the jurors that they could use her lack of retreat "as evidence in considering whether or not an individual . . . reasonably believed there was a[n] imminent use of physical violence as set forth in [the relevant jury instruction]," but that they could not use the evidence "to say she didn't withdraw, therefore she cannot use that as a defense."  The court further told the jury to "consider that to be an argument to you as to what was reasonably believed or not believed," and then let the prosecutor continue with rebuttal.

¶ 9    Immediately after this ruling, the prosecutor made the following statements:

- "If you're scared of someone, if you're caught in an interaction with them for 8 to 10 minutes, a reasonable person would move from it, if they have a direct line to go away."

- "She knows [running away is] the appropriate thing to do. She doesn't do that, ladies and gentlemen, because she's not acting in self-defense."

The judge once again overruled the defense's objections and permitted the argument.

## B. Standard of Review

¶ 10 Whether a prosecutor's statements during closing arguments rise to the level of misconduct is generally left to the discretion of the trial court. *Domingo-Gomez v. People*, 125 P.3d 1043, 1049 (Colo. 2005). "Any improper argument by either counsel must be dealt with promptly by the trial court." *Id.* The prosecutor must "scrupulously avoid comments that could mislead or prejudice the jury." *Id.*

¶ 11 We will not disturb a trial court's rulings regarding prosecutorial misconduct absent an abuse of discretion. *People v. Strock*, 252 P.3d 1148, 1152 (Colo. App. 2010). When the

defendant has objected, we review for harmless error, and thus will only reverse if there is a reasonable probability that the error contributed to the defendant's conviction. *Id.*

### C. The Availability of a Path of Retreat

¶ 12 Under Colorado's self-defense statute, a person may use physical force against another "in order to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person, and he may use a degree of force which he reasonably believes to be necessary for that purpose." § 18-1-704(1), C.R.S. 2017. A person who reasonably perceives an imminent use of unlawful physical force is entitled to use force in defending himself or herself "without first retreating, or seeking safety by means of escape." *Cassels v. People*, 92 P.3d 951, 956 (Colo. 2004). Such a person "does not have to consider whether a reasonable person in the situation would opt to retreat to safety rather than resorting to physical force to defend against unlawful force." *People v. Toler*, 9 P.3d 341, 347 (Colo. 2000).

¶ 13 In this case, the prosecution raised the issue of the availability of retreat five separate times during its closing and rebuttal

arguments. The first three times were at least arguably subject to conflicting interpretations: that if Monroe believed force was going to be used against her, she should have retreated instead of resorting to force; or that Monroe not taking advantage of an available avenue of retreat suggests that she did not, in fact, believe force was going to be used against her. The first would clearly be improper, as it would seek to impose a duty to retreat.

¶ 14 The second argument may or may not have been proper. Monroe argues that it is categorically improper. Essentially, she argues that permitting a jury to consider the lack of retreat when assessing a defendant's belief that the use of force by another is imminent would in effect impose a duty to retreat, because the only way a defendant could convince someone that he or she had such a belief would be to do something (retreat) he or she has no obligation to do. The People, citing *People v. Martinez*, 224 P.3d 1026 (Colo. App. 2009), *aff'd on other grounds*, 244 P.3d 135 (Colo. 2010), counter that evidence of lack of retreat is germane to a defendant's reasonable belief of the need for self-defense. *Martinez*, however, is inapposite.

6

¶ 15    In *Martinez*, the defendant and a codefendant were charged with assault after beating a man outside of a bar.  At trial, the defendant asserted self-defense.  The evidence showed that the defendant was driving away when the victim walked out of the bar.  *Id.* at 1029-30.  The defendant turned around, got out of his car, and approached the victim.  *Id.*  Though the evidence regarding how the ensuing altercation began was conflicting, the victim ultimately suffered a broken orbital bone and jaw bone, and had several teeth knocked out.  *Id.*  The defendant claimed at trial that he acted in self-defense because he was "scared and . . . nervous" about the victim, and that the victim "had a black belt."  *Id.* at 1033.

¶ 16    During closing, the prosecutor told the jury that the defendant had "made a U-turn and drove around for the confrontation."  *Id.* at 1031.  The prosecutor continued, stating the defendant and co-defendant "could have left.  They had the perfect opportunity if [defendant] was so scared and he was very nervous about this."  *Id.*

¶ 17    In context, the prosecutor's argument was not about whether the defendant should have retreated from an ongoing confrontation, but rather whether the defendant should have instigated the confrontation in the first place.  In fact, in overruling the

7

defendant's objection, the court noted, "we have some testimony that [defendant] was the initial aggressor." *Id.* We therefore do not agree that *Martinez* supports pointing to an unused avenue of retreat as evidence of a defendant's lack of belief in the need for force.

¶ 18     There is undeniable appeal to Monroe's call for a categorical prohibition against permitting the jury to consider whether there was an available avenue of retreat when assessing a defendant's belief in the need for the use of defensive force. First, since the common responses to a threat are "fight, flight, or freeze," it is far from clear what, if anything, a person's lack of flight from a threat says about whether that threat was actually and reasonably perceived; the fact that the response was to fight instead of to flee may well be equally probative of the perception that a threat was imminent. Moreover, the line between the use of this evidence to judge one's perception and the use of this evidence to judge one's response to that perception is so fine as to be almost imperceptible. We have significant concern that any use of the evidence of an unused avenue of retreat would unavoidably misdirect a jury into

considering the reasonableness of a defendant's response to a threat rather than the perception of the threat in the first place.

¶ 19   Indeed, here, the prosecutors themselves struggled with, and ultimately failed to maintain, the distinction in their own arguments. That being said, because we conclude that the prosecution's argument here inappropriately imposed a duty to retreat, we leave for another day the issue of whether it would ever be proper to attack the veracity of a defendant's claimed belief in the need for defensive force by highlighting an unused avenue of retreat. We will thus refer to the use of this argument as "arguably proper."

### D.   The Imposition of a Duty to Retreat

¶ 20   In the prosecutor's first reference to the unused avenue of retreat, he noted that "she does have a clear line of retreat, if she's actually scared for her safety." The jury could have heard that as "a scared person should retreat instead of using force" — a patently improper argument. Defense counsel apparently heard it that way, as he raised an objection that the prosecutor was asserting a duty to retreat. The court disagreed and overruled the objection but, apparently recognizing this ambiguity, attempted to clarify for the

jury that it would be permitted to consider the lack of retreat as evidence that defendant did not actually believe there was an imminent use of force, but not for the improper purpose of considering whether her actions in not retreating were reasonable.

¶ 21    Despite the court's guidance, the prosecutor immediately restated the argument in equally ambiguous terms, arguing that she "could have backed away, if she wanted to, if she was actually afraid."[1]  Again, this language may be directed at her perception and belief, or improperly directed at the reasonableness of her conduct in not retreating.

¶ 22    Significantly, even after the court's attempt to articulate the parameters of the argument it would permit regarding the availability of retreat, the prosecution did not alter course.  Indeed, on rebuttal closing, the arguments moved further outside those parameters, ultimately abandoning any effort to tie the evidence to

---

[1] Each time, the prosecutor prefaced his argument with an acknowledgment that Monroe had no duty to retreat.  This statement alone, however, did not eliminate the ambiguity in the argument.  *See People v. Castillo*, 2014 COA 140M, ¶¶ 72-74 (noting that similar comments, including the reiteration of the no duty to retreat rule, were subject to multiple interpretations), *rev'd on other grounds*, 2018 CO 62.

Monroe at all, let alone to her perception or belief. First, the prosecutor asserted that "[w]hen you do not remove yourself from a situation when you easily can, that contradicts that you were in fear of being hurt." As with the assertions during the first closing argument, this statement could merely be an argument that Monroe's actions would not support a finding that she actually believed the use of force was imminent; but it is at least as likely to be an argument that any person who does not take advantage of a path of retreat *by definition* does not believe force will be used against her. The latter would be clearly improper, as it would impose a *de facto* duty to retreat.

¶ 23 Monroe again objected, and the court did not sustain the objection, but reiterated what use of this evidence it would permit. Yet, the prosecution's argument went from ambiguous to clearly improper. Specifically, the prosecutor argued that "a reasonable person would move from [the danger]." This is unequivocally an argument that Monroe had a duty to retreat.

¶ 24 At this point, the court should have sustained Monroe's objection and instructed the jury to disregard the argument. Instead, the court overruled the objection and explicitly treated this

11

objection (and, implicitly, the ruling on the objection) as exactly the same as the previous objections and rulings. The prosecutor then continued down this misleading path, arguing that retreating was "the appropriate thing to do." Again, the court overruled Monroe's objection and permitted the prosecutor to pursue this line of argument.

¶ 25     When a prosecutor misstates the law and, upon objection, the court "declines to direct the jury that the prosecutor's version of the instruction is incorrect, the court improperly permits the jury to adopt the prosecutor's version of the law." *People v. Anderson*, 991 P.2d 319, 321 (Colo. App. 1999). In its initial rulings, the court here attempted to redirect the jury toward an arguably proper use of the evidence. However, the last two statements by the prosecution unambiguously and improperly focused entirely on the reasonableness of Monroe's conduct, rather than on her belief or what her conduct demonstrated about her belief, and thus effectively imposed a duty to retreat. More importantly, the trial court did not remedy these improper statements. In essence, the trial court permitted the jury to believe that it could consider whether a reasonable person would have retreated, in direct

contravention of the instruction that no such duty exists. In so doing, the trial court abused its discretion.

## E.     Harmlessness

¶ 26    Having found error, we turn to whether that error was harmless. In so doing, we recognize that the court (and, for that matter, the prosecutors themselves) repeatedly stated that Monroe had no duty to retreat. We also acknowledge that the jury was formally instructed regarding the duty to retreat.[2] Finally, we do not discount the long-established premise that we presume that the jury follows the instructions it is given.

¶ 27    Nevertheless, on the unique facts of this case, we find that there is a reasonable probability that the jury was misled, and that the misleading arguments contributed to the verdict.

---

[2] We note that the actual form of the written jury instruction contains a typographical error, in that it placed the "no duty to retreat" language within the second subparagraph of the first paragraph, instead of standing alone. Monroe asserts that this placement had the effect of misleading the jury into considering the "no duty to retreat" as germane only to the second of the two elements of the defense. Because the specific format of the instruction does not contribute to our ruling, and in light of our resolution of the prosecutorial misconduct claim, we do not address Monroe's assertion of error in this regard.

¶ 28    When boiled down to its essence, the progression transpired as follows: three times, the prosecution made an argument that could have been interpreted as either improper or arguably proper. The trial court told the jury to consider the statement to be advancing the arguably proper argument. Thereafter, the prosecution unambiguously advanced the improper argument. The court again overruled the objection and permitted the argument, and in so doing explicitly accepted the improper argument as the equivalent of the arguably proper one. Finally, the prosecution again made the improper argument, and the court simply overruled the objection with no effort to distinguish the two arguments. The result of this progression is that, ultimately, the court placed its stamp of approval on the improper argument (i.e., that "a reasonable person would have retreated," and that retreat was "the appropriate thing to do").

¶ 29    By permitting the prosecutors to argue that Monroe had a duty to retreat, the court "permit[ted] the jury to adopt the prosecutor's version of the law." *Anderson*, 991 P.2d at 321. When the court finally acquiesced to the prosecution's assertion that a reasonable person would retreat, it directly contradicted its

14

instruction that Monroe had no duty to retreat. A reasonable jury would be left with the erroneous understanding that while it would not be permitted to impose an obligation or duty to retreat, it could find that a reasonable person would have done so. Because of this confusion, we cannot presume the jury correctly applied the instruction it was given.

¶ 30    The creation of such confusion is no different than having not instructed the jury at all, and carries the same risks. *See Cassels*, 92 P.3d at 956 (Failure to properly instruct the jury on the doctrine of no-retreat "creates a risk that the jury will not acquit the defendant because it will consider the defendant's use of force unreasonable in light of the possibility of retreat."). Further, following an "erroneous instruction precludes the jury from making a finding on the actual element of the offense." *Griego v. People*, 19 P.3d 1, 8 (Colo. 2001) (quoting *Neder v. United States*, 527 U.S. 1, 10 (1999)).[3]

---

[3] While *Griego* addressed an affirmatively incorrect jury instruction, the underlying rationale of the decision is nonetheless applicable in this context, particularly in light of the mandate in *Anderson*. Since the jury was permitted to be misled as to the impact of Monroe's failure to retreat, it cannot be said with any confidence that the jury

15

¶ 31    Nor was the evidence of guilt in this matter overwhelming.  We note that, while the presentation of evidence lasted approximately two days, the jury deliberated for almost as long.  The evidence of who was the initial aggressor and whether Faulkenberry posed a threat when he reached into his pocket was in conflict.

¶ 32    The prosecutor encouraged the jury to reject Monroe's claim of self-defense solely because she failed to retreat.  The trial court allowed that argument to be made.  In light of the irreconcilable conflict between permitting the prosecution to argue that Monroe's lack of retreat was unreasonable and the instruction that she had no duty to retreat, we conclude that it was reasonably probable that the error contributed to the conviction.

¶ 33    Accordingly, the error was not harmless.

### III.   Monroe's Other Contentions

¶ 34    In light of our resolution of this issue, and because we cannot say whether Monroe's other assertions of error are likely to occur upon retrial, we need not address them.

---

properly evaluated the required element that the prosecution disprove the affirmative defense of self-defense.

## IV. Conclusion

¶ 35 The judgment is reversed, and the case is remanded for a new trial.

JUDGE DAILEY and JUDGE DUNN concur.