Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us.  Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 29, 2020

**2020 CO 67**

**No. 18SC708,** *People v. Monroe*—**Prosecutorial Misconduct**—**Self-Defense**—**Doctrine of No Retreat.**

In this case, the supreme court considers whether it's proper to argue that a defendant didn't act reasonably in self-defense because the defendant failed to retreat before using defensive force.

In light of Colorado's longstanding no-duty-to-retreat rule, which permits non-aggressors to stand their ground when acting in self-defense, the supreme court holds that it's improper to argue that a defendant acted unreasonably in self-defense because the defendant failed to retreat from an encounter.  Here, the prosecution argued that the defendant's failure to retreat undermined the reasonableness of her belief that she needed to act in self-defense.  Because such argument is improper, and because the trial court's error in permitting that argument wasn't harmless, the supreme court affirms the judgment of the court of appeals on different grounds, reverses the defendant's judgment of conviction, and remands this case for a new trial.

**2020 CO 67**

**Supreme Court Case No. 18SC708**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 13CA1604

**Petitioner:**

The People of the State of Colorado,

v.

**Respondent:**

Sheila Renee Monroe.

**Judgment Affirmed**
*en banc*
June 29, 2020

**Attorneys for Petitioner:**
Philip J. Weiser, Attorney General
Matthew S. Holman, First Assistant Attorney General
　　　*Denver, Colorado*

**Attorneys for Respondent:**
Megan A. Ring, Public Defender
Anne T. Amicarella, Deputy Public Defender
　　　*Denver, Colorado*

**JUSTICE HOOD** delivered the Opinion of the Court.
**CHIEF JUSTICE COATS** dissents, and **JUSTICE BOATRIGHT** joins in the dissent.

¶1     Colorado has long followed the no-duty-to-retreat rule in self-defense cases. That rule permits non-aggressors to stand their ground when acting in self-defense. So, when the defendant, Sheila Renee Monroe, argued that she stabbed a fellow bus passenger in the neck out of self-defense, she in effect asserted her legal authority to do so without first retreating to a place of no escape.

¶2     Yet, during the closing arguments of Monroe's trial, the prosecution repeatedly argued that Monroe didn't act reasonably in self-defense because she failed to retreat. Although the trial court admonished the jury that Monroe didn't have a duty to retreat, it instructed the jury that it could consider Monroe's failure to retreat as relevant to whether she actually believed that she faced an imminent use of unlawful force. The jury found Monroe guilty of first degree assault and attempted first degree murder.

¶3     Monroe appealed, arguing that because she had no duty to retreat the trial court should not have permitted any argument regarding her failure to do so, even if it was ostensibly directed at undermining the reasonableness of her claim of self-defense.

¶4     A division of the court of appeals reversed her convictions. It abstained from deciding whether it's ever proper to argue that a defendant's failure to retreat undermines the reasonableness of a defendant's self-defense claim, but it

concluded that the prosecution's arguments impermissibly imposed on Monroe a duty to retreat. It thus remanded this case for a new trial.

¶5 We now address the question the court of appeals left for another day: We hold that the prosecution may not argue that a defendant acted unreasonably in self-defense because she failed to retreat from an encounter. Thus, the trial court erred by permitting the prosecution's arguments regarding Monroe's failure to retreat. Accordingly, we affirm the judgment of the court of appeals on different grounds, reverse Monroe's judgment of conviction, and remand this case for a new trial.

## I. Facts and Procedural History

¶6 Monroe boarded a city bus and sat down in the back row. Monroe and the victim, who was seated nearby, began arguing almost immediately. At some point, Monroe displayed a pocketknife and informed the victim that one of her acquaintances on the bus carried a gun. The victim then told Monroe that he was going to call the police. He reached into his pocket, apparently to remove his cell phone.

¶7 At this point, stories diverge. The victim testified that once he had removed his phone from his pocket and began to enter a phone number, Monroe stood up and stabbed him in the neck. Another passenger in the back row testified that the

3

victim "was opening his jacket" and had his phone "in his hand" and Monroe stabbed the victim "almost simultaneously."

¶8 After the stabbing, Monroe exited the bus. She was located by the police later that day and subsequently charged with first degree assault and attempted first degree murder.

¶9 At trial, Monroe argued that she acted in self-defense after the victim reached into his pocket. During closing argument, the prosecutor countered by twice highlighting Monroe's failure to retreat before stabbing the victim. He said: "She didn't have any duty to retreat, but she does have a clear line of retreat, if she's actually scared for her safety." Defense counsel objected, arguing that this imposed a duty to retreat. But the trial court overruled the objection. It called the jury's attention to the self-defense instruction, which specified that Monroe didn't have a duty to retreat, and it directed the jury to only consider Monroe's failure to retreat as relevant to "whether or not she reasonably believed there was an imminent use of force."[1] The prosecutor then continued his same line of argument, stating, "Again, she did not have any duty to retreat but could have backed away, if she wanted to, if she was actually afraid."

---

[1] In relevant part, the self-defense instruction stated: "The Defendant was not required to retreat to a position of no escape in order to claim the right to employ force in her own defense."

¶10    The prosecution referenced Monroe's failure to retreat three more times during rebuttal closing, first arguing, "You have no duty to retreat. No one in Colorado has to run away from someone endangering them. But let's be clear. When you do not remove yourself from a situation when you easily can, that contradicts that you were in fear of being hurt." Defense counsel objected, but, after reiterating that Monroe didn't have a duty to retreat, the trial court overruled the objection and permitted the jury to consider the argument to determine whether or not Monroe "reasonably believed there was a[n] imminent use of physical violence."

¶11    After this colloquy, the prosecutor continued, stating,

> There is a clear path down that aisle. You can see it on the video. If you're scared of someone, if you're caught in an interaction with them for 8 to 10 minutes, a reasonable person would move from it, if they have a direct line to go away. There is an open aisle — [.]

Defense counsel again objected, noting that "[t]he reasonableness standard [does] not require a person to retreat." But, after again directing the jury to consider the self-defense instruction, the trial court permitted the argument. Finally, the prosecutor stated:

> She even says in her interview, "I wouldn't get into this. If I were scared, I would have run away. That's what I would do. I'm not going to get into trouble." She knows that's the appropriate thing to do. She doesn't do that, ladies and gentlemen, because she's not acting in self defense.

Again the defendant objected; again the court overruled her objection.

5

¶12 The jury found Monroe guilty of first degree assault and attempted first degree murder. She was sentenced to a total of ninety-six years in prison. Monroe appealed her conviction, contending that the trial court erred in permitting the prosecution to argue during closing and rebuttal closing that Monroe's failure to retreat undermined the reasonableness of her claim of self-defense.

¶13 A unanimous division of the court of appeals reversed. *People v. Monroe*, 2018 COA 110, ¶ 2, __ P.3d __. It recognized the "undeniable appeal [of] . . . a categorical prohibition against permitting the jury to consider whether there was an available avenue of retreat when assessing a defendant's belief in the need for the use of defensive force." *Id.* at ¶ 18. But the division ultimately left that issue "for another day," since it determined that the prosecution's last two arguments during rebuttal closing effectively imposed on Monroe a duty to retreat. *Id.* at ¶¶ 19, 25. Because the trial court didn't remedy those improper statements and thus permitted the jury to "consider whether a reasonable person would have retreated, in direct contravention of the instruction that no such duty exists," the division concluded that the trial court reversibly erred. *Id.* at ¶¶ 25, 33.

¶14 We granted the prosecution's petition for certiorari review.[2]

---

[2] We granted certiorari to review the following issues:

6

## II. Analysis

¶15  We first identify the standard of review that governs claims of prosecutorial misconduct. We then determine whether the prosecution may argue that a defendant didn't reasonably act in self-defense because she failed to retreat from an encounter. Because we conclude that such argument is improper, the trial court abused its discretion by permitting the prosecution's arguments regarding Monroe's failure to retreat. And because that error wasn't harmless, we remand this case for a new trial.

### A. Standard of Review

¶16  It is improper for counsel to misstate the law or "misinterpret[] for the jury how the law should be applied to the facts" during closing argument. *People v. Sepeda*, 581 P.2d 723, 732 (Colo. 1978). Whether a prosecutor's statements during closing argument qualify as misconduct is "generally a matter left to the trial court's discretion." *Domingo-Gomez v. People*, 125 P.3d 1043, 1049 (Colo. 2005). But

---

1. Whether the prosecution properly argued that the defendant's ability to leave an encounter was relevant to whether she feared for her safety and, therefore, to whether she acted in self-defense.

2. Whether the court of appeals erred in holding that the prosecution's argument concerning the defendant's ability to leave an encounter improperly injected a duty to retreat, contrary to Colorado's self-defense law, despite the prosecution's clarification of the argument and the trial court's oral and written jury instructions.

"[w]hen a court, upon a proper objection, declines to direct the jury that the prosecutor's version of the [law] is incorrect, the court improperly permits the jury to adopt the prosecutor's version of the law." *People v. Anderson*, 991 P.2d 319, 321 (Colo. App. 1999). Thus, an appellate court "can review counsel's arguments to avoid a miscarriage of justice notwithstanding the trial court's failure or refusal to do so." *Domingo-Gomez*, 125 P.3d at 1050. We'll disturb a trial court's ruling on prosecutorial misconduct if we find the trial court abused its discretion. *See People v. Strock*, 252 P.3d 1148, 1152 (Colo. App. 2010).

¶17 Monroe objected to the prosecution's arguments regarding retreat. Thus, we review for harmless error and will reverse the judgment of conviction if there is a reasonable probability that any error by the trial court contributed to Monroe's conviction. *Crider v. People*, 186 P.3d 39, 42 (Colo. 2008).

## B. Failure to Retreat

¶18 In Colorado, a person may use physical force against another "in order to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person, and he may use a degree of force which he reasonably believes to be necessary for that purpose." § 18-1-704(1), C.R.S. (2019).

¶19 "In Colorado, only initial aggressors must retreat before using force in self-defense." *Cassels v. People*, 92 P.3d 951, 956 (Colo. 2004). So, a non-aggressor may

assert self-defense without (1) considering whether a reasonable person would retreat to safety rather than resorting to physical force, or (2) actually retreating from an attack even if she could safely do so. *People v. Castillo*, 2014 COA 140M, ¶ 74, __ P.3d __ (quoting *People v. Toler*, 9 P.3d 341, 347 (Colo. 2000)), *rev'd on other grounds*, 2018 CO 62, 421 P.3d 1141.

¶20 Accordingly, the prosecution may not argue that a defendant is barred from acting in self-defense unless she first retreats from an encounter. *See Brown v. United States*, 256 U.S. 335, 343 (1921) (holding that retreat "is not a condition of immunity").

¶21 Still, the prosecution contends that we have already recognized the distinction between improper arguments that impose a duty to retreat and proper arguments regarding a defendant's failure to retreat that *undermine the reasonableness* of a defendant's use of force. According to the prosecution, a jury must consider the "totality of the circumstances" surrounding a defensive encounter, which includes any available but unused avenues of retreat. They contend that such evidence could be helpful to the jury in evaluating "the reasonableness of the defendant's belief that [s]he needed to use self-defense in the given situation, and . . . the reasonableness of the actual force used by the defendant to repel the apparent danger." *See Riley v. People*, 266 P.3d 1089, 1094 (Colo. 2011).

9

¶22 On the other hand, Monroe urges this court to prohibit, for any purpose, argument regarding a defendant's failure to retreat. She questions its probative value and asserts that it will invite juries to improperly conduct a post hoc examination of the reasonableness of the defendant's conduct.

¶23 We agree with Monroe.

¶24 First, we reject the prosecution's assertion that the Colorado Court of Appeals has already recognized the permissibility of such argument. For support, the prosecution points to *Castillo* and *People v. Martinez*, 224 P.3d 1026 (Colo. App. 2009). But in neither *Castillo* nor *Martinez* did the court of appeals permit the prosecution to argue that the defendant didn't act reasonably in self-defense because the defendant failed to use an available avenue of retreat.

¶25 In *Castillo*, the prosecutor made multiple comments during closing argument that implied the defendant should have retreated instead of using force. ¶ 72. The prosecution argued on appeal that such comments were meant to impeach the defendant's testimony that he couldn't physically leave the scene. *Id.* at ¶ 73. But the division noted that it was possible to interpret those comments "as stating that it was *unreasonable* for defendant to shoot . . . rather than leave." *Id.* (emphasis added). Under this interpretation, it deemed the prosecutor's comments improper, since a person using defensive force need not consider "whether a reasonable person in the situation would opt to retreat to safety rather

10

than resorting to physical force to defend against unlawful force." *Id.* at ¶¶ 74, 77 (quoting *Toler*, 9 P.3d at 347).

¶26    The comments made by the prosecutor in *Castillo* ("He could have left. He could have kept driving, but somebody said something that pissed him off," *id.* at ¶ 72), are quite similar to those made by the prosecution here ("Again, she did not have any duty to retreat but could have backed away, if she wanted to, if she was actually afraid."). The *Castillo* division considered such argument improper commentary on the defendant's failure to retreat. *See id.* at ¶¶ 74, 77. Thus, *Castillo* does not support the prosecution's position.

¶27    And neither does *Martinez*. The defendant there had already started to drive away when he observed the victim leaving a bar. *Martinez*, 224 P.3d at 1029–30. The defendant then stopped his car, and a fight ensued. *Id.* at 1030. The defendant claimed that he acted in self-defense because he was "so scared and . . . nervous" about the victim. *Id.* at 1033. During closing argument, the prosecutor challenged those assertions, stating, "They could have left. They had the perfect opportunity if [defendant] was so scared and he was very nervous about this." *Id.* at 1031 (alteration in original). Defense counsel objected, arguing that the prosecutor's comments misstated the law because the defendant had no duty to retreat. *Id.*

¶28    But, when viewed in context, it's clear that the prosecutor's comments were directed, not at the defendant's failure to retreat once he felt threatened, but his

11

*decision to enter the fray*, which arguably made him an initial aggressor. *Id.* (quoting the prosecutor as saying, "What happened? They made a U-turn. And you can see it on that video. They didn't back out of the parking lot and happen to drive by. They made a U-turn and drove around for the confrontation."). Further, the trial court admitted the comments for that purpose. *Id.* (quoting the trial judge as saying, "I think it's in line with the instruction on the affirmative defense. *If you'll note, we have some testimony that [defendant] was the initial aggressor.*"). Thus, the argument in *Martinez* wasn't admitted for the purpose of undermining the reasonableness of the defendant's claim that he acted in self-defense.

¶29 So, no appellate court in Colorado (at least in a published opinion) has permitted argument regarding an unused avenue of retreat, even if offered only to attack the reasonableness of a defendant's use of force. And we decline to do so today.

¶30 To allow the prosecution to argue that a defendant's failure to retreat undermines the reasonableness of that defendant's self-defense claim would cripple the no-duty-to-retreat rule. The only inferences a jury could draw from that line of argument are that, if retreat was possible but not pursued, a defendant must not have acted reasonably by using force or must not have actually perceived a threat, since she would have fled if she had. It thus conditions the use of defensive force on flight, so the only defendants "who would not have to retreat

12

in the face of . . . force would be those who have no ability to retreat in the first place." *Commonwealth v. Hasch*, 421 S.W.3d 349, 361 (Ky. 2013).

¶31    Further, this type of argument is of limited value to a jury. The prosecution contends that argument regarding a defendant's failure to retreat is particularly relevant to a defendant's claim that she faced an imminent use of unlawful force. But this argument is premised on a faulty assumption, since not all individuals facing a threat respond by fleeing. *See* Karin Roelofs, *Freeze for Action: Neurobiological Mechanisms in Animal and Human Freezing*, 372 Phil. Transactions Royal Soc'y B 1, 1 (2017), https://royalsocietypublishing.org/doi/pdf/10.1098/rstb.2016.0206 [https://perma.cc/48G3-6VTW] ("In stressful situations, . . . most people tend to fall back on primary 'freeze—fight—flight' tendencies and have great difficulty controlling their actions or shifting flexibly between passive freezing and active fight-or-flight."). Thus, a defendant's decision to retreat is no more proof that she faced an imminent threat of unlawful force than a decision to remain and fight.

¶32    There's also a significant risk that such argument would confuse a jury, which weighs against allowing its admission. *See* CRE 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of

13

cumulative evidence."). Here, the prosecutors and trial court struggled to distinguish between arguments that imposed an outright duty to retreat and those that didn't. How, then, can we trust that a jury won't erroneously reject a defendant's self-defense claim simply because the defendant failed to retreat? *See Griego v. People*, 19 P.3d 1, 8 (Colo. 2001) (observing that following an "erroneous instruction precludes the jury from making a finding on the actual element of the offense" (quoting *Neder v. United States*, 527 U.S. 1, 10 (1999))).[3]

¶33 Our prior statements directing juries to consider the totality of the circumstances when assessing the reasonableness of a defendant's use of force, in *Riley*, 266 P.3d at 1094, and *Kaufman v. People*, 202 P.3d 542, 551 (Colo. 2009), don't require a different result. Beyond those general statements of law, *Riley* and *Kaufman* are largely inapposite: *Riley* involved multiple assailants, 266 P.3d at 1091, while *Kaufman* involved the effect that an erroneous jury instruction on second degree assault had on the defendant's self-defense claim, 202 P.3d at 550–51. Neither case involved retreat, so neither required this court to consider how the

---

[3] Although *Griego* involved an error in a jury instruction, *id.* at 4, its rationale remains relevant to this case: If a trial court were to expressly (albeit unintentionally) direct a jury to consider argument imposing a duty to retreat, this would preclude the jury from properly evaluating the defendant's self-defense claim.

14

no-duty-to-retreat rule affects a jury's ability to consider the "totality of the circumstances."

¶34    If anything, *Riley* and *Kaufman* affirm the principle that a jury should consider a defendant's perception of events as they unfold. *Kaufman*, 202 P.3d at 551; *see also Riley*, 266 P.3d at 1094 (permitting a jury to consider the number of assailants "reasonably appearing to be threatening the defendant"). And allowing argument regarding an unused avenue of retreat might encourage a jury to erroneously focus just on the reasonableness of a defendant's *response* to a threat without actually linking that response to the reasonableness of a defendant's *perception* of a threat. *Cf. Brown*, 256 U.S. at 343 ("Detached reflection cannot be demanded in the presence of an uplifted knife.").

¶35    True, there's an analytical distinction between completely barring defendants from asserting self-defense unless they attempt to flee and arguing that an avenue of retreat undermines the reasonableness of a defendant's use of force. *See id.* ("Rationally the failure to retreat is a circumstance to be considered with all the others in order to determine whether the defendant went farther than he was justified in doing; not a categorical proof of guilt."). But, though "in the abstract, the [prosecution's] theory is metaphysically appealing," it would prove unworkable in reality. *Hasch*, 421 S.W.3d at 362–63. The line between argument that imposes a duty to retreat (a threatened person *should* retreat instead of using

15

force) and argument that undermines the reasonableness of a defendant's use of force (a threatened person *would* retreat instead of using force) is too thin to allow the latter.[4]

## C. Harmless Error

¶36     Having clarified that trial courts should not permit the prosecution to argue that an unused avenue of retreat undermines the reasonableness of a defendant's self-defense claim, we next consider whether it was error to allow the prosecution's statements on retreat during closing and rebuttal closing arguments. We need not engage in lengthy discussion to resolve that inquiry—in its opening brief, the prosecution admits that each statement directed the jury to consider Monroe's failure to retreat as relevant to whether she reasonably believed that she needed to act in self-defense. In light of our decision today categorially prohibiting argument regarding a defendant's failure to retreat, all five of the prosecution's statements regarding Monroe's failure to retreat were improper. Accordingly, the trial court abused its discretion by permitting their admission.[5]

---

[4] To the extent other states permit juries to consider argument regarding a defendant's failure to retreat, we decline to follow suit in light of the many concerns that caution against such an approach. And we're not alone in doing so. *See Hasch*, 421 S.W.3d at 363.

[5] The division found error because (1) the prosecution impermissibly argued that Monroe had a duty to retreat when it asserted that "a reasonable person would move from [the danger]" and running away was "the appropriate thing to do";

16

¶37 This error wasn't harmless. The prosecution raised this improper argument five times—twice during closing argument and three times during rebuttal closing. *See People v. Walters*, 148 P.3d 331, 335 (Colo. App. 2006) (noting that "whether the misconduct was repeated" is relevant to whether reversal is warranted). And the trial court expressly directed the jury to consider Monroe's failure to retreat when determining "whether or not she reasonably believed there was an imminent use of force." Thus, there's a significant risk that the jury convicted Monroe because it erroneously believed that her failure to retreat necessarily negated the reasonableness of her use of force. *See Cassels*, 92 P.3d at 956 (noting that failure to instruct a jury on the doctrine of no-retreat "creates a risk that the jury will not acquit the defendant because it will consider the defendant's use of force unreasonable in light of the possibility of retreat").[6]

---

and (2) the trial court should have sustained defense counsel's objections to these statements. *Monroe*, ¶¶ 23–25. The prosecution seeks review of both issues. Because we hold that it was improper for the prosecution to argue that Monroe's failure to retreat undermined the reasonableness of her claim of self-defense, we need not also consider whether any of the prosecution's arguments ultimately imposed a duty to retreat. Thus, we decline to do so.

[6] In *Cassels*, the jury wasn't instructed on the doctrine of no-retreat, *id.* at 954, while the jury here was. But the prosecution's arguments regarding Monroe's failure to retreat create the same risks identified by this court in *Cassels*; namely, that a jury will not consider a defendant's use of force reasonable unless the defendant utilized any available avenues of retreat.

¶38 Also, the evidence against Monroe wasn't overwhelming. *See Walters*, 148 P.3d at 335 (noting that "the strength of the evidence" is relevant to whether reversal is warranted). As the division noted, "while the presentation of evidence lasted approximately two days, the jury deliberated for almost as long." *Monroe*, ¶ 31. And the parties disputed both whether Monroe acted as the initial aggressor and whether the victim posed a threat to her when he reached into his pocket. Accordingly, there is a reasonable probability that the trial court's error contributed to Monroe's conviction.

### III. Conclusion

¶39 We affirm the judgment of the court of appeals on different grounds. Accordingly, we reverse Monroe's judgment of conviction and remand the case for a new trial.

**CHIEF JUSTICE COATS** dissents, and **JUSTICE BOATRIGHT** joins in the dissent.

CHIEF JUSTICE COATS, dissenting.

¶40    Because I believe the majority misapprehends our rationale for not conditioning self-defense on first retreating; because it fails to distinguish prosecutorial misconduct from considerations of evidentiary relevance; and because it generally restricts prosecutorial argument in a way that I not only believe to be unjustified but also to conflict with our prior holdings on the subject, I respectfully dissent.

¶41    Initially, the majority's rationale for finding the prosecutor's argument improper, and therefore for finding an abuse of discretion by the trial court in permitting it, remains far from clear to me.  Rather than consistently relying on any heretofore accepted rubric for designating prosecutorial argument improper, or misconduct, for the bulk of its opinion the majority simply twists itself into knots in an attempt to explain why the prosecution is wrong in asserting that we have previously approved argument of this kind.  Whether one finds that attempt persuasive or not, it clearly offers no counter rationale for now dubbing the argument improper.

¶42    By articulating the standard of review for prosecutorial misconduct and referring to a "no-duty-to-retreat rule," the majority at times appears to analogize comment on a defendant's failure to retreat before using deadly force in defense of his person to comment on his exercise of a constitutional right.  While it is clearly

1

improper, for example, for a prosecutor to comment on a defendant's exercise of his privilege against self-incrimination, either by declining to make a statement while in police custody, *see Doyle v. Ohio*, 426 U.S. 610, 611 (1976), or by declining to testify at trial, *see Griffin v. California*, 380 U.S. 609, 615 (1965), or to comment on a defendant's exercise of his right to be tried to a jury rather than to the court, *see People v. Rodgers*, 756 P.2d 980, 983 (Colo. 1988), *overruled on other grounds by People v. Miller*, 113 P.3d 743, 748–49 (Colo. 2005), the failure to require retreat as a prerequisite to the use of deadly force in self-defense reflects a judicial interpretation of the affirmative defense itself. Not only is it not a process right as to the exercise of which a jury is precluded from drawing any inference whatsoever; it is in fact a legal interpretation of the defense, as to which the jury is expressly entitled to be made aware.

¶43 A person may not use a greater degree of physical force in self-defense than he reasonably believes to be necessary for that purpose, and he is expressly barred from using deadly physical force unless he reasonably believes a lesser degree of force will be inadequate. *See* § 18-1-704(1)–(2), C.R.S. (2019). As we have previously explained in some detail, it is the long-established rule in Colorado that the failure to retreat cannot be considered evidence that a lesser degree of force would have been adequate. *Idrogo v. People*, 818 P.2d 752, 756 (Colo. 1991). Because this would not be apparent to the jury from instructions defining self-defense

2

alone, we have expressly held that a defendant raising this defense is entitled to have the jury separately instructed that he had no duty to retreat before using deadly force. *Id.* at 756–57. The question of a duty to retreat is therefore hardly something of which the jury may not be made aware.

¶44 At times the majority appears to suggest that comment on the defendant's failure to retreat is a question of relevance. The majority does not suggest that the prosecutor was commenting on evidence outside the record or that evidence of the defendant's failure to retreat before stabbing the victim was itself inadmissible. Nor does the majority suggest that the prosecutor was asking the jury to draw any unreasonable inference about the elements of self-defense from the defendant's failure to retreat. By reference to Rule 403 of the Colorado Rules of Evidence, it merely finds that there was too great a risk that the prosecutor's argument about reasonable inferences that could be drawn from this admissible evidence would confuse the jury.

¶45 It would indisputably have been improper for the prosecutor to imply through his argument that the defendant *did have* a duty to retreat before using force against the victim, but in light of his express warnings to the contrary, that clearly could not have been the case. Each time the prosecutor argued that the defendant's failure to retreat, notwithstanding the ease with which she could have simply moved away from where the victim was sitting on the bus, was relevant to

3

the question whether she actually believed she had to defend herself against an imminent use of unlawful physical force by that victim, he emphasized that the defendant nevertheless did not have any duty to retreat before using deadly force. In related contexts we have long made clear that prosecutors are not precluded from asking the jury to draw reasonable inferences from the evidence, as long as they are careful not to mislead the jury concerning their ultimate burden of proof or the right of the defendant not to explain or produce evidence. *See People v. Medina*, 545 P.2d 702, 702–03 (Colo. 1976) (no error when prosecutor commented during rebuttal closing on defendant's failure to produce alibi witness, where jury was warned that defendant had no obligation to produce evidence and prosecution still had burden of proof).

¶46　　Ours is an adversarial system of justice.　While attorneys are clearly prohibited from misleading the jury or prompting the jury to act for improper reasons, limiting one side from asking the jury to draw reasonable inferences from evidence properly admitted at trial skews the process and detracts from its truth-seeking goal.　As the venerated Judge Learned Hand long ago observed:

> While, of course, we recognize that the prosecution is by custom more rigidly limited than the defense, we must decline to assimilate its position to that of either judge or jury, or to confine a prosecuting attorney to an impartial statement of the evidence.　He is an advocate, and it is entirely proper for him as earnestly as he can to persuade the jury of the truth of his side, of which he ought to be thoroughly convinced before he begins at all.　To shear him of all oratorical emphasis, while leaving wide latitude to the defense, is to load the

4

scales of justice; it is to deny what has always been an accepted incident of jury trials, except in those jurisdictions where any serious execution of the criminal law has yielded to a ghostly phantom of the innocent man falsely convicted.

*Di Carlo v. United States*, 6 F.2d 364, 368 (2d Cir. 1925).

¶47 In light of the instructions on self-defense to which the jury was entitled and those it was actually given, nothing in the prosecutor's argument in this case could even remotely have been taken to suggest that the defendant's failure to retreat was evidence from which the jury should find that a lesser degree of force would have been adequate or that she was not entitled to assert the defense at all.

¶48 Because I believe the majority reaches an incorrect result in reversing the defendant's conviction and sets a bad precedent for enforcement of the criminal law in the jurisdiction, I respectfully dissent.

I am authorized to state that JUSTICE BOATRIGHT joins in this dissent.