Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
April 30, 2018

**2018 CO 33**

**No. 16SC313, People v. Smith—Invited Error—Waiver—Simple Variance—Plain Error Review**

In this case, the supreme court reviews two issues: (1) whether the respondent waived or invited error with respect to his claim of a prejudicial simple variance when his defense counsel stated that the proposed jury instructions were generally acceptable and (2) whether a jury instruction on menacing that does not identify the particular victim named in the charging document creates a simple variance warranting reversal when the jury could potentially have deemed either of two people to be the victim.

In light of the supreme court's opinion in People v. Rediger, 2018 CO 32, ___ P.3d ___, also decided today, the court concludes that the respondent neither waived nor invited error with respect to his simple variance claim. The court thus reviews the respondent's variance claim for plain error and concludes that because the evidence presented at the respondent's trial would not obviously have allowed the jury to find that the respondent menaced a victim not named in his charging document, the trial court did not plainly err in instructing the jury on menacing without specifying the victim.

Accordingly, the supreme court reverses the judgment of the division below.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2018 CO 33

### Supreme Court Case No. 16SC313
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 14CA2164

**Petitioner:**

The People of the State of Colorado,

v.

**Respondent:**

Adam Isolano Smith.

### Judgment Reversed
*en banc*
April 30, 2018

**Attorneys for Petitioner:**
Cynthia H. Coffman, Attorney General
Joseph G. Michaels, Assistant Attorney General
  *Denver, Colorado*

**Attorneys for Respondent:**
Law Office of Daniel H. Kyser, L.L.C.
Daniel H. Kyser
  *Englewood, CO*

**JUSTICE GABRIEL** delivered the Opinion of the Court.

¶1    In this case we consider two issues: (1) whether defendant Adam Isolano Smith waived or invited error with respect to his claim of a prejudicial simple variance when defense counsel stated that the proposed jury instructions were generally acceptable and (2) whether a jury instruction that does not identify the particular victim named in the charging document creates a simple variance warranting reversal when the jury could potentially have deemed either of two people to be the victim.[1]   In light of our opinion in People v. Rediger, 2018 CO 32, ___ P.3d ___, also decided today, we conclude that Smith neither waived nor invited error with respect to his variance claim because the record does not indicate that he intentionally relinquished a known right or that he injected the alleged error into this case.  Consequently, we review Smith's variance claim for plain error.  Because we cannot say that the evidence presented at Smith's trial obviously would have allowed the jury to conclude that Smith menaced a victim not named in his charging document, however, we conclude that the trial court did not plainly err in instructing the jury without specifying the victim.

---

[1] Specifically, we granted certiorari to review the following issues:

1.  Whether a defendant waives his right to appellate review of a jury instruction when he affirmatively participated in amending part of the instruction but did not object to a different part he later challenges on appeal.

2.  Whether a jury instruction that fails to identify a particular victim but includes a correlating special interrogatory that affirmatively identifies only one possible victim as to the elemental instruction creates a fatal simple variance that risks resulting in a non-unanimous verdict.

¶2 Accordingly, although we agree with the division that the doctrine of invited error does not bar appellate review of Smith's claim, we reverse the division's judgment.

## I. Facts and Procedural History

¶3 Smith and his then-girlfriend were staying together in a hotel room at the Mt. Princeton Hot Springs Resort. After an argument, the girlfriend left the room and called the police for help in retrieving her belongings. A police officer arrived, and with the officer behind her, the girlfriend attempted to re-enter the room. As the girlfriend pushed open the door, which Smith had barricaded with furniture, she and the officer saw Smith standing with a handgun pointed at the partially open door. The girlfriend backed out of the door, and she and the officer retreated, the girlfriend to the side of the building and the officer to his patrol car. Smith later exited the room, and after a brief physical confrontation, the officer arrested him.

¶4 The People subsequently charged Smith with menacing-domestic violence related, among other counts. The menacing-domestic violence related charge alleged as follows:

> On or about January 14, 2014, Adam Isolano Smith, by any threat or physical action unlawfully, feloniously, and knowingly placed or attempted to place [the girlfriend] in fear of imminent serious bodily injury by use of a deadly weapon or any article used or fashioned in a manner to cause a person to reasonably believe that the article was a deadly weapon, namely: Hand Gun; in violation of sections 18-3-206(1)(a)/(b) and 18-6-800.3, C.R.S.

¶5 The case proceeded to trial, and at trial, Smith admitted that he had pointed a gun at his girlfriend, but he explained that he had done so in self-defense because he

3

was in imminent fear of his girlfriend or an intruder, in part because his girlfriend had attacked him earlier that day and on prior occasions. Smith further testified that he did not see the officer while he was holding the gun. Both the girlfriend and the officer testified that they had seen Smith holding the gun and that they were afraid when Smith pointed his gun in their direction.

¶6 Prior to instructing the jury, the trial court engaged in a discussion with counsel regarding the proposed jury instructions and verdict form. As pertinent here, during this discussion, Smith requested that the court insert the phrase "or another individual" into the self-defense instruction so that it read, "It is also the theory of the defense that Mr. Smith acted upon a reasonable belief that [the girlfriend] or another individual was going to use imminent and unlawful physical force upon him on January 14, 2014, due to the injuries already inflicted upon Mr. Smith by [the girlfriend]." The court included this modification in the final instructions. Otherwise, Smith did not object to the instructions or the verdict form. To the contrary, when asked whether the instructions that the court had shown him were acceptable, defense counsel stated, "They are acceptable, Judge."

¶7 The trial court ultimately instructed the jury that Smith was charged with a number of offenses, including "Menacing-domestic violence related." As to this charge, the court instructed the jury, in pertinent part, as follows:

> The elements of the crime of menacing with a deadly weapon, as to Count 1 are:
>
> 1. that the defendant,

4

2.  in the State of Colorado, at or about the date and place charged,

3.  knowingly,

4.  by threat or physical action,

5.  placed or attempted to place <u>another person</u> in fear of imminent serious bodily injury,

6.  by the use of a deadly weapon,

7.  without the affirmative defense [of self-defense] in instruction number 28.

(Emphasis added.)

¶8 Consistent with the foregoing, the verdict form that the court provided to the jury required the jury to determine whether (1) Smith was guilty or not guilty of "Count 1, Menacing" and (2) whether, if the jury's verdict was guilty, the menacing was an act of domestic violence.

¶9 After deliberation, the jury found Smith guilty of "Count 1, Menacing," but it found that the prosecution had failed to prove that the menacing was an act of domestic violence.

¶10 Smith appealed, arguing, as pertinent here, that (1) the absence of a specified victim in the jury instruction on menacing, when the charging document specified the girlfriend as the victim, amounted to a simple variance and (2) this variance resulted in a risk of a non-unanimous verdict because some jurors might have found that the girlfriend was the victim while others might have found that the officer was the victim. The People responded that Smith had waived this claim and invited any error by

requesting the addition of the "another person" language to the self-defense instruction and by acquiescing generally to the jury instructions.

¶11    In a unanimous, unpublished opinion, a division of the court of appeals reversed. People v. Smith, No. 14CA2164 (Colo. App. Mar. 10, 2016). The division concluded that Smith's general "acceptance" of the jury instructions did not invite the alleged error in those instructions and therefore did not bar appellate review of his variance claim. Id. at 4–5.[2] Proceeding then to review Smith's variance claim for plain error, the division concluded that the menacing jury instruction, when combined with the trial testimony and the prosecutor's rebuttal closing argument, in which the prosecutor argued that Smith "look[ed] pretty good for a guy who pointed a gun at a police officer," gave rise to a simple variance that prejudiced Smith's right to a unanimous verdict. Id. at 14. Perceiving plain error, the division thus reversed Smith's menacing conviction and remanded for a new trial on that count. Id. at 14–15.

¶12    The People petitioned for a writ of certiorari, and we granted that petition.

## II. Analysis

¶13    We begin by considering whether Smith waived or invited error with respect to his variance claim. Concluding that he did not, we review this claim for plain error and proceed to decide whether the trial court plainly erred on the facts of this case.

---

[2] The division does not appear to have expressly addressed the People's separate but similar contention that Smith waived his variance claim. Because the division applied plain error review to that claim, however, we conclude that the division implicitly rejected the People's waiver argument.

6

## A. Invited Error and Waiver

¶14 In <u>Rediger</u>, ¶¶ 34–38, which we have also decided today, we concluded that Rediger's general expression of satisfaction with the proposed jury instructions in that case did not invite error with respect to a specific jury instruction that resulted in a constructive amendment of the information. In so concluding, we noted that invited error is a narrow doctrine that prevents a party from complaining on appeal of an error that he or she injected at trial deliberately and as a matter of trial strategy, as opposed to through neglect. <u>Id.</u> at ¶ 34. We reasoned that because Rediger had done nothing to inject the error—such as drafting, tendering, or requesting the challenged instruction—we could not conclude that he had invited error with respect that instruction. <u>Id.</u> at ¶ 35.

¶15 In reaching this conclusion, we rejected the People's reliance on <u>Horton v. Suthers</u>, 43 P.3d 611, 619 (Colo. 2002), on which they also rely here, for the proposition that a defendant necessarily invites error by "expressly acquiescing" to proposed jury instructions. <u>Rediger</u>, ¶¶ 36–37. We noted that <u>Horton</u> involved a party's express—and admitted—change of position (initially conceding the opposing party's right to certain relief and then reversing course and arguing the opposite). <u>Id.</u> at ¶ 36. We viewed such facts as readily distinguishable from those at issue in <u>Rediger</u>, in which Rediger had acquiesced generally to the proposed jury instructions but apparently did so without knowledge of the significant error contained in one of the instructions. <u>Id.</u> at ¶ 37.

¶16 The same reasoning applies in this case. The record contains no evidence that Smith drafted, tendered, or requested the instruction on menacing or any portion of that

7

instruction. Nor does Smith's general acceptance of or acquiescence to the instructions as a whole constitute a deliberate and strategic <u>injection</u> of the error that he now asserts on appeal. <u>See</u> <u>id.</u> Without any indication that Smith affirmatively injected the error at issue here, we agree with the division below that the doctrine of invited error does not bar appellate review of Smith's variance claim.

¶17 We also concluded in <u>Rediger</u> that Rediger did not waive his constructive amendment claim by stating that he was generally satisfied with the proposed jury instructions. <u>See</u> <u>id.</u> at ¶¶ 39–44. In reaching this conclusion, we reasoned that a showing of waiver requires some evidence, beyond mere acquiescence, that the defendant <u>intentionally</u> relinquished a <u>known</u> right or privilege. <u>Id.</u> Because the record contained no such evidence, we determined that Rediger had merely forfeited, rather than waived, his constructive amendment claim, thereby allowing for appellate review, albeit for plain error. <u>Id.</u> at ¶ 44.

¶18 Likewise, in this case, a search of the record before us reveals no evidence that Smith, by stating that the instructions generally were "acceptable" to him, intended to relinquish a known variance claim. As in <u>Rediger</u>, no evidence suggests that Smith considered objecting to the alleged variance but then for some reason, tactical or otherwise, decided against it. <u>Id.</u> at ¶ 42. Indeed, the parties and the trial court appear never to have discussed or acknowledged the pertinent differences between Smith's charging document and the proposed jury instructions or the implications of those differences. Accordingly, as in <u>Rediger</u>, we cannot conclude that Smith intentionally relinquished a known variance claim.

8

¶19 For several reasons, we are not persuaded otherwise by the People's assertion that Smith's requested modification of the self-defense instruction to include the phrase "or another individual" establishes either a waiver of his variance claim or an invited error.

¶20 First, the self-defense and menacing instructions were separate and distinct, and the People do not contend that Smith had any involvement in modifying the menacing instruction, which is the instruction at issue here. See Auman v. People, 109 P.3d 647, 665 n.22 (Colo. 2005) ("We do not consider the error here to have been invited by Auman. Although Auman tendered the second degree burglary instruction, the error at issue is in the theft instruction which was not tendered by her defense.").

¶21 Second, it appears that defense counsel requested the modification to the self-defense instruction in order to harmonize the instructions with Smith's testimony that he pointed the gun at the door to defend himself against an intruder, without knowing, at the time, that the intruder was the girlfriend. Accordingly, the requested modification had no bearing on the alleged variance and did not suggest that defense counsel somehow intended to convey to the jury that the menacing charge may have involved a victim other than the girlfriend. In any event, we "indulge every reasonable presumption against waiver," People v. Curtis, 681 P.2d 504, 514 (Colo. 1984) (emphasis added), and we cannot presume from Smith's proposed modification to one instruction that he intentionally relinquished his claim arising from different language in another.

¶22 Accordingly, we conclude that Smith neither invited the error asserted here nor waived his variance claim when he acquiesced generally to the proposed jury

instructions.   Rather, for the reasons set forth in <u>Rediger</u>, ¶¶ 39–47, we believe that Smith's lack of an objection amounted, at most, to a forfeiture, which we review for plain error.  We now proceed to that analysis.[3]

## B.  Plain Error Review

¶23     The People argue that if we review the simple variance issue at all, then we should reverse the division's judgment that the instruction at issue established a simple variance constituting reversible plain error.  We agree and conclude that because the lack of an identified victim in Smith's jury instructions did not obviously give rise to the risk of a non-unanimous verdict, the trial court did not plainly err.

¶24     Plain error addresses error that is obvious and substantial and that so undermines the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction.   <u>People v. Miller</u>, 113 P.3d 743, 750 (Colo. 2005).  "To qualify as plain error, an error must generally be so obvious that a trial judge should be able to avoid it without the benefit of an objection."  <u>Scott v. People</u>, 2017 CO 16, ¶ 16, 390 P.3d 832, 835.

¶25     A simple variance, in turn, occurs when the evidence presented at trial proves facts materially different from those alleged in the charging document.  <u>People v. Rodriguez</u>, 914 P.2d 230, 257 (Colo. 1996).   An error in jury instructions, such as a

---

[3] The People suggest that Crim. P. 30 prohibits plain error review in this case, citing for support our statement in <u>People v. Barker</u>, 501 P.2d 1041, 1043 (Colo. 1972), that "[t]he 'plain error' rule must be read in harmony with Crim. P. 30, which provides that no party may assign as error the giving of an instruction to which he has not objected before the instructions are submitted to the jury."  <u>Barker</u> itself, however, harmonized the plain error rule and Crim. P. 30 by applying plain error review to a jury instruction issue raised for the first time on appeal.  <u>Id.</u>  We do the same here.

simple variance, generally does not rise to the level of plain error unless a review of the entire record establishes a reasonable possibility that the improper instruction contributed to the defendant's conviction. See People v. Stewart, 55 P.3d 107, 120 (Colo. 2002).

¶26 Here, our review of the entire record—including the statements of the trial judge, the arguments of counsel, the evidence presented to the jury, and the jury instructions themselves—does not reveal an obvious risk that the jury would have understood the menacing charge to apply to either the girlfriend or the officer. We reach this conclusion for several reasons.

¶27 First, prior to voir dire, the trial court read to the prospective jurors the charges in the information. The court noted that the first count was titled, "Menacing domestic violence related," and the court advised the prospective jurors that this count identified the girlfriend as the victim of the alleged menacing.

¶28 Second, in the prosecutor's initial statement to the prospective jurors, she argued that Smith had "point[ed] his handgun directly at" the girlfriend. The prosecutor then explained that "[t]he charges in the case are domestic violence related, in the sense that the menacing count, domestic violence, because [the girlfriend] was in an intimate relationship with the defendant." The prosecutor reiterated this point in her opening statement when she said that Smith had "point[ed] his pistol" at the girlfriend. Indeed, defense counsel also made this point, explaining that the girlfriend stuck her head in the door and saw Smith "pointing a pistol from across the room towards the door."

¶29     Third, Smith admitted to pointing the gun at the girlfriend and sought to justify this action as taken in self-defense. See People v. Pickering, 276 P.3d 553, 555 (Colo. 2011) ("'[A]ffirmative' defenses . . . admit the defendant's commission of the elements of the charged act, but seek to justify, excuse, or mitigate the commission of the act . . . ."). Acknowledging Smith's position, the prosecutor stated, "[T]he only thing we're arguing about here is whether this was self-defense or not." The prosecutor continued, "There is no doubt that pointing a deadly weapon, this gun, at someone is going to put them in fear of serious bodily injury or death. And [the girlfriend] testified that she was afraid." Defense counsel then echoed these points in his own closing argument, asking, "Did [Smith] point a gun at [the girlfriend]? He did. But what you need to ask yourself is, was that reasonable, was that reasonable for what he knew?"

¶30     Fourth, in describing the crimes with which Smith was charged, the final jury instructions reiterated that the first count was "Menacing-domestic violence related." Such a count could only have related to the girlfriend, not the police officer.

¶31     Finally, consistent with all of the foregoing, the verdict form presented to the jury included a domestic violence special interrogatory, asking the jury to determine whether the prosecution had proved that the menacing was an act of domestic violence. This form, read together with the jury instructions, further indicated that the menacing charge applied to the girlfriend only, because the officer could not have been subject to an act of domestic violence by Smith.

¶32     Notwithstanding the foregoing, Smith suggests that the lack of a specified victim in the jury instructions, combined with the jury's ultimate finding that the menacing

12

was not an act of domestic violence, leaves open the possibility that some jurors may have found that Smith menaced the officer rather than the girlfriend. Some jurors could have reached this conclusion, Smith contends, based primarily on (1) the officer's testimony that he was afraid when he saw Smith pointing the gun at him and the girlfriend and (2) the fact that, during rebuttal closing, the prosecutor rhetorically asked the jury to think about whether Smith "look[ed] pretty good for a guy who pointed a gun at a police officer."

¶33 Smith is correct that had the jury found that the menacing was an act of domestic violence, the jury's findings would show, without question, that all of the jurors had determined that Smith menaced the girlfriend. The jury's finding that the menacing was not an act of domestic violence, however, does not give rise to an obvious risk that some jurors concluded that Smith had menaced the officer rather than the girlfriend. To reach such a conclusion, a juror seemingly would have had to ignore the fact that Smith was charged with "Menacing-domestic violence related." The juror would also have had to discredit Smith's admission and the undisputed evidence that he pointed the gun at the girlfriend, finding instead that Smith pointed the gun at the officer but not the girlfriend. Given the scant evidence and argument supporting such a finding, and viewing the record as a whole, we cannot say that the risk of non-unanimity arising from the lack of an identified victim in the elemental instruction for menacing was "so obvious that [the] trial judge should [have been] able to avoid it without the benefit of an objection." Scott, ¶ 16, 390 P.3d at 835.

13

¶34 In reaching this conclusion, we are not persuaded by Smith's contention that the division's opinion in People v. Simmons, 973 P.2d 627 (Colo. App. 1998), controls this case. There, as here, the information named a specific person as the victim of the menacing at issue, and the jury instructions stated that the defendant must have placed "another person" in fear. Id. at 628. Unlike here, however, the jury in Simmons does not appear to have been given a verdict form that tended to clarify who the victim at issue was. Perhaps more significant, unlike here, the prosecutor in Simmons expressly argued to the jury that it could convict the defendant if it found that either of two possible victims was placed in fear of imminent serious bodily injury, even though the information named only one of those two victims. Id. at 629. The prosecutor then exacerbated this error by arguing several additional times that it did not matter who the perceived victim was. Id. On these facts, the division properly discerned a constructive amendment to the information and a risk that the jury might not have unanimously agreed as to the particular victim. Id. The prosecutor invited such a result. The facts of this case do not present the same obvious risk of a non-unanimous verdict.

¶35 Accordingly, we conclude that the trial court did not plainly err in instructing the jury without specifying the girlfriend as the victim of menacing, and we thus reverse the division's judgment perceiving reversible plain error.

### III. Conclusion

¶36 For these reasons, we conclude that Smith neither waived nor invited error with respect to his variance claim. We further conclude, however, that the trial court did not

plainly err in instructing the jury. Accordingly, we reverse the division's judgment and remand this case for further proceedings consistent with this opinion.