23CA0859 Peo in Interest of GL-P 05-22-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0859
City and County of Denver Juvenile Court No. 22JD368
Honorable Laurie A. Clark, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of G.L-P.,

Juvenile-Appellant.

---

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE LIPINSKY
Pawar and Hawthorne*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 22, 2025

---

Philip J. Weiser, Attorney General, Jacob R. Lofgren, Senior Assistant Attorney General, Denver, Colorado, for Petitioner-Appellee

Megan A. Ring, Colorado State Public Defender, Mark Evans, Deputy State Public Defender, Denver, Colorado, for Juvenile-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1    G.L-P., a juvenile, appeals the judgment adjudicating him delinquent based on acts that would have constituted indecent exposure if committed by an adult.  He contends that the juvenile court erred by (1) failing to apply the mens rea of "knowingly" to each element of indecent exposure and (2) failing to intervene after the prosecutor commented on the alleged victim's credibility during closing argument.  We affirm.

## I.    Background

¶ 2    The fact finder could reasonably have found the following facts from the evidence introduced at trial.

¶ 3    G.L-P. attended the same wrestling camp as the alleged victim — A.A-S., a female high school student.  Near the end of the last day of camp, G.L-P. and A.A-S. had an encounter in an otherwise empty stairwell outside a gym.  A.A-S. claimed that G.L-P. touched his genitals through his clothes while repeatedly asking her to engage in sexual conduct with him.  She said "no" and immediately told her coaches what G.L-P. said to her, but not that he touched himself in her presence.  Another coach then told G.L-P. to apologize to A.A-S.  After he apologized, the coaches allowed G.L-P. to continue practicing, although they kept A.A-S. next to

1

them.  Staff from the hosting high school later contacted law enforcement.  A Denver Police Department detective interviewed A.A-S. and G.L-P.

¶ 4    The prosecution alleged that G.L-P. engaged in behavior that, if completed by an adult, would constitute indecent exposure and harassment.  The prosecution dismissed the harassment charge before trial.

¶ 5    At a bench trial, A.A-S. testified that G.L-P. asked her to follow him to a stairwell to talk privately.  Once there, G.L-P. told her that she caused him to have an erection and that she needed to "help him out" with it.  She further testified that G.L-P. asked her for a "blowjob" or to "make out with him," and that, while making these requests, he rubbed his genitals over his clothes.  She said "no" to him approximately seven times before walking away.

¶ 6    Although G.L-P. did not testify, the prosecution introduced a video of his interview with the detective.  In the interview, G.L-P. said that he left the gym to use the restroom and that he found A.A-S. in the stairwell.  G.L-P. said that he and A.A-S. started talking, and that he told her she was "cute."  G.L-P. said that he may have scratched his upper thigh during the conversation.  He

2

denied making any sexual statements to A.A-S. or touching his genitals during their brief interaction.

¶ 7    During closing argument, defense counsel asserted that, when speaking with police officers, A.A-S. exaggerated G.L-P.'s acts because she was unhappy with what she perceived as her coaches' dismissive reaction to her initial outcry.

¶ 8    The court found that the prosecution proved each element of indecent exposure beyond a reasonable doubt, adjudicated G.L-P. delinquent, and sentenced him to one year of probation.

## II.    The Indecent Exposure Statute

¶ 9    As relevant here, a person commits indecent exposure if he (1) knowingly (2) performs an act of masturbation in a manner which exposes the act to the view of any person (the conduct element), (3) under circumstances in which such conduct is likely to cause affront or alarm to the other person (the circumstances element).  § 18-7-302(1)(b), C.R.S. 2022.  (We cite the version of the indecent exposure statute in effect at the time of the alleged offense, as the General Assembly later amended the statute.  Ch. 422, sec. 1, § 18-7-302, 2023 Colo. Sess. Laws 2479-80.)

¶ 10    At trial, the court concluded that the "knowingly" mental state applies to the conduct element but not to the circumstances element.  G.L-P. contends on appeal that the court erred because "knowingly" applies to both elements and the court did not find that he knew his conduct was likely to cause affront or alarm to A.A-S.

¶ 11    We review issues of statutory interpretation de novo.  *McCoy v. People*, 2019 CO 44, ¶ 37, 442 P.3d 379, 389.  In interpreting a statute, we aim to "ascertain and give effect to the legislature's intent."  *Id.*  We begin with the "language of the statute, giving its words and phrases their plain and ordinary meanings."  *Id.*

¶ 12    As a general rule, when a statute prescribes a culpable mental state as an element of an offense, that mental state applies to every element of the offense "unless an intent to limit its application clearly appears."  § 18-1-503(4), C.R.S. 2024.  But the Colorado Supreme Court held that the circumstances element of the indecent exposure statute is objective, meaning that the prosecution must prove that, under the facts of the case, the defendant's conduct was likely to cause a reasonable person affront or alarm.  *People v. Randall*, 711 P.2d 689, 692 (Colo. 1985); *see also People in Interest of J.O.*, 2015 COA 119, ¶ 39, 383 P.3d 69, 76, *overruled on other*

4

*grounds by People in Interest of T.B.*, 2021 CO 59, 489 P.3d 752.

The *Randall* court reasoned that, by including the word "likely" in

the circumstances element — and thus invoking "[c]oncepts of

probability and reasonableness" — the General Assembly intended

fact finders to evaluate the circumstances objectively, rather than

based on how the defendant or the victim perceived them. *Randall*,

711 P.2d at 692. Thus, "evidence of a victim's reaction to an act of

indecent exposure or of the perpetrator's awareness or

comprehension of that particular reaction is not required to

establish the offense." *Id.*

¶ 13     In his reply brief, G.L-P. accepts the premise that the

circumstances element is measured objectively. But he argues that

the objective nature of the circumstances element "does not mean

. . . that no mens rea applies" to it. But a "knowingly" mens rea,

which requires a subjective determination of the actor's intent,

cannot be engrafted onto an element of an offense subject to an

objective test. *See Oram v. People*, 255 P.3d 1032, 1038 (Colo.

2011) ("The mental state of knowingly is a subjective rather than an

objective standard and does not include a reasonable care

standard."); *People v. Bryant*, 2018 COA 53, ¶¶ 98-100, 428 P.3d

669, 685-86 (holding that the mental state of "knowingly" is a subjective standard).

¶ 14 Thus, the court properly applied the mental state of "knowingly" to the conduct element but not to the circumstances element.

### III. Prosecutorial Misconduct

¶ 15 During closing argument, the prosecutor made the following statements about A.A-S. and her motive to lie:

- "Here we have testimony[,] and Your Honor I would just for argument sake say[,] that she is very credible on the witness stand. She has no reason to be here in front of her family to . . . testify against someone that she doesn't even know. There's no history between them."

- "[T]here's nothing that . . . came out . . . that she was mad about something else."

- "She has zero reason to come here today under oath and make up that it was beyond just saying that . . . she was cute."

- "[T]here was nothing to suggest she had anything going wrong earlier in the day, that she wanted to blow this up.

> She doesn't have qualms with the school that [G.L-P.] goes to. She has zero reason to come here and [inaudible] to THE COURT."

- "And again there's no reason for [A.A-S.] to come here today and make this up."

Defense counsel did not contemporaneously object to these statements.

¶ 16    G.L-P. asserts that the prosecutor's referring to A.A-S.'s credibility amounted to misconduct and that the court plainly erred by permitting the prosecutor to do so. Because G.L-P. did not object to the statements at the time, we agree that the plain error standard of review applies to this argument. *See Hagos v. People*, 2012 CO 63, ¶ 14, 288 P.3d 116, 120.

¶ 17    Under that standard, we will not reverse unless the alleged misconduct was obvious and substantial. *Id.* An error is obvious if it contravenes a clear statutory command, a well-settled legal principle, or established Colorado case law. *People v. Crabtree*, 2024 CO 40M, ¶ 42, 550 P.3d 656, 667. An error is substantial if it undermined the trial's fundamental fairness so as to cast serious

doubt on the judgment of conviction's reliability. *People v. Smith*, 2018 CO 33, ¶ 24, 416 P.3d 886, 891.

¶ 18    Even if the court erred by allowing the prosecutor to refer to A.A-S.'s credibility, *see Domingo-Gomez v. People*, 125 P.3d 1043, 1049 (Colo. 2005) (holding that "a prosecutor cannot communicate [his] opinion on the truth or falsity of witness testimony during final argument"), any error was not substantial.

¶ 19    G.L-P. does not cite any case in which a Colorado appellate court held that, during a bench trial, a prosecutor's reference to a witness's credibility during closing argument requires reversal under the plain error standard. Further, G.L-P. does not contend that the challenged statement affected the court's decision.

¶ 20    Absent any "indication in [the] record that the trial court was improperly swayed by [the prosecutor's] rhetoric," a prosecutor's improper characterization of the defendant at the conclusion of a bench trial is not plain error. *People v. Liggett*, 114 P.3d 85, 89 (Colo. App. 2005) (holding that the prosecutor's repeated references to defendant as a "con man" during closing argument in a bench trial did not constitute plain error), *aff'd*, 135 P.3d 725 (Colo. 2006). The Colorado Supreme Court has acknowledged the obvious point

that "[t]rial judges are presumed to know the law and to apply it in making their decisions." *People v. White*, 870 P.2d 424, 440 (Colo. 1994) (emphasis omitted) (quoting *Walton v. Arizona*, 497 U.S. 639, 653 (1990)); *see also Liggett*, 135 P.3d at 733 ("In the context of a bench trial, the prejudicial effect of improperly admitted evidence is generally presumed innocuous.").

¶ 21    For these reasons, any error was not plain because it did not "cast serious doubt on the reliability of the judgment of conviction." *Smith*, ¶ 24, 416 P.3d at 891.

IV.   Disposition

¶ 22    The judgment is affirmed.

JUDGE PAWAR and JUDGE HAWTHORNE concur.

9